Edward W. ROBERTS, Sr., etc.

v.

Paul R. FLEURY, M.D., et al.

No. CIV. S 96–2068.

United States District Court,
D. Maryland.

Dec. 24, 1997.

Matt R. Ballenger, Suder & Suder, Baltimore, MD, for Edward Roberts.

Robert J. Farley, Tuschman & Kalur, Columbia, MD, for Craig Schaefer.

E. Dale Adkins, III, Anderson, Coe & King, Baltimore, MD, Hugh Cropper, IV, Anderson, Coe & King, Ocean City, MD, for Paul Fleury.

## MEMORANDUM OPINION

SMALKIN, District Judge.

This is a civil case, filed under the diversity jurisdiction of the Court, originally asserting wrongful death and survival claims against two physicians, arising out of the death of the plaintiff's decedent, one Elsie Roberts, of inflammatory breast cancer. After one of the defendants (about whom more later) settled, the case proceeded to trial as against Dr. Fleury. The jury was dismissed after having informed the Court that it was hopelessly deadlocked, a mistrial was declared, and a timely renewed motion for judgment was filed by the defendant Fleury pursuant to Fed.R.Civ.P. 50(b)(2)(B). By letter, the plaintiff was advised to address, in general, the sufficiency of the evidence to generate a triable issue as to malpractice, as well as to address the argument raised by defendant's counsel in his motion. The plaintiff's opposition to the motion has been received and reviewed. No oral argument is needed. Local Rule 105.6, D.Md.

The plaintiff's decedent had been in rather good health when, while at her part-time home in Florida in the spring of 1992, she noticed a reddening and soreness in her left breast. She went to a walk-in clinic, on April 14, 1992, where she was started on antibiotics and advised to follow up with her own physician on her return home. On returning home shortly thereafter, Mrs. Roberts immediately visited Dr. Fleury, her family physician, who noted symptoms that caused him to be concerned about the potential for breast cancer. Accordingly, he scheduled her for a mammogram immediately. The mammogram was negative. Dr. Fleury, a board-certified internist, recognizing that a specialist's clinical evaluation of Mrs. Roberts' condition was necessary, also immediately re-

ferred her to a local surgeon, known to him as competent in diagnosing and treating breast cancer.

The surgeon, Dr. Schaefer, examined Mrs. Roberts and immediately performed two biopsies. He was supplied with pathology reports on both. One biopsy was a fine needle aspiration, which was read by the pathologist as showing atypical nuclei (which is not, of itself, indicative of a neoplastic condition, according to *all* the testimony at trial), unexplained by any evidence of inflammation. The pathologist's report on the fine needle biopsy was caveated as not ruling out cancer, stating:

> Since no inflammation is identified to explain the nuclear atypia, the possibility of malignancy remains in the differential diagnosis. If the accompanying skin biopsy is negative, then a breast biopsy [excisional] may be indicated.

The "accompanying skin biopsy" report identified no evidence of carcinoma, but it showed minimal perivascular chronic inflammation in the upper dermis and focal hemorrhage in the lower dermis.

Dr. Schaefer (who settled before trial) sent a letter to Dr. Fleury on May 4, 1992, stating that there was no demonstrated evidence of cancer in Mrs. Roberts' breast, but that she had, in his opinion, an inflammatory process.

On May 7, 1992, Dr. Schaefer sent a final letter to Dr. Fleury, enclosing the biopsy reports referred to above. That letter follows:

> Enclosed please find the pathology report on Elsie Roberts. As you will recall you referred this very pleasant 69 year old lady to us for evaluation of a reddened area of the left breast. Examination gave concern for possible inflammatory cancer. Biopsies were fortunately negative for this. Mrs. Roberts states that her inflammatory reaction has largely subsided. I return her to your care at this time.

The evidence at trial showed that Mrs. Roberts did not again contact Dr. Fleury about any symptoms related to her breast, but that she did continue to consult Dr. Schaefer about breast problems, ultimately resulting in an open biopsy, in November of 1992, with a finding of breast cancer. The cancer was a highly malignant, rare cancer of the breast, *viz.,* inflammatory breast cancer, which has devastating metastatic properties. After various treatments not here germane, Mrs. Roberts died of her cancer in November, 1993.

The plaintiff's case against Dr. Fleury rested entirely on one alleged incident of medical malpractice. The plaintiff acknowledged that Dr. Fleury fully complied with the standards of care applicable to an internist when he ordered a mammogram and referred Mrs. Roberts to Dr. Schaefer. The plaintiff contended, at trial, that Dr. Fleury breached the standard of care by accepting Dr. Schaefer's evaluation at face value, which resulted from his not making an independent evaluation of the fine needle and skin biopsy reports, which, in turn according to plaintiffs, resulted in Mrs. Roberts not having an immediate excisional biopsy. Plaintiff further contended that such a biopsy would have disclosed her cancer and would have given her the greater–than–50% chance of survival that justifies recovery under Maryland law.

Both the plaintiff and the defendant put on expert testimony from physicians as to the standard of care and whether or not Dr. Fleury breached it. As noted *ante,* the jury failed to agree on a verdict.

■ Upon its thorough review, the Court is now convinced that it should have granted the defendant's motion for judgment as a matter of law under Fed.R.Civ.P. 50 at trial. The reasons follow.

It is a fact of modern life that there is more information available to professionals in every field—even lawyers—than one individual could ever hope to master. Certainly, no reasonable person could deny that this is a reality of modern medical practice. Specialty boards have been established for all conceivable major divisions—and even subdivisions—of medical practice. Indeed, the nature of specialization these days seems accurately portrayed in the cynic's definition of an expert as "one who knows more and more about less and less until he knows everything about nothing."

■ Thus, it is generally accepted that a medical practitioner—although licensure alone entitles him or her to practice in any

field of medicine—fails to adhere to generally accepted standards of care if he or she attempts to diagnose or treat symptoms that require referral to a particular specialist. Dr. Fleury, a board-certified practitioner of what used to be called general medicine (now referred to as internal medicine), recognized that Mrs. Roberts might have a life-threatening condition as soon as he saw her. He also recognized that he could not make a definitive diagnosis based on his own clinical findings. He, thus, immediately referred her to a radiologist for a mammogram and to a surgeon for clinical evaluation of her symptoms. The surgeon rendered his opinion to Dr. Fleury that Mrs. Roberts did not show any evidence of cancer. That opinion was based not only on the surgeon's interpretation of his own findings on clinical examination—which specifically incorporated observations about Mrs. Roberts' improving clinical course—but also on his expert interpretation of another expert's (the pathologist's) two biopsy reports.

The Court is mindful that the plaintiff's two experts testified that Dr. Fleury should have gone beyond Dr. Schaefer's diagnostic conclusion and made his own evaluation of the pathology reports that were forwarded to him with Dr. Schaefer's opinion letter. Even if this testimony is accepted as establishing that an internist has a duty to look beyond a consultant's opinion, it seems to the Court that a reasonable fact-finder could conclude that the standard of care was breached so as to be the proximate cause of injury only if the hard data—such as pathology or other lab reports—unequivocally demonstrate that the expert consultant's conclusion was in error.

To hold otherwise would plainly and wrongly inject the courts into the governance of medical practice and would subject consultants' diagnoses not only to second-guessing by referring physicians afraid to rely on consultants any longer (with the consequent waste of scarce medical resources on even more "defensive medicine" than is already practiced), but also to ultimate third-guessing by lay jurors. This would be an intolerable and unsustainable result in any rational system of law. This Court recognizes the importance of the right to trial by jury, but it is the duty of all courts to shape the law so that it comports with common sense and the real world conditions in which cases arise.

In this case, the evidence offered by plaintiff shows, at most, that the pathology reports were ambiguous, in that the fine needle report urged open biopsy only in case the skin report was negative. It must be remembered that the caveat relied upon by plaintiff at trial concerning possible indication for open biopsy was predicated on the absence of inflammation identified in the fine needle biopsy to explain the nuclear atypia. The skin report was negative for cancer, but it was positive for another abnormality, *viz*, inflammation that could explain the nuclear atypia. Thus, the hard data accompanying Dr. Schaefer's report did not unequivocally indicate that the consultant's diagnosis was in error, and Dr. Fleury was under no duty to second-guess Dr. Schaefer. Consequently, Dr. Fleury had no duty, upon receipt of the Schaefer final report, to order more or different tests.

In that Mrs. Roberts never came back to Dr. Fleury for further treatment or diagnosis of any breast problems, Dr. Fleury simply had no further duty to her in this regard, after his receipt of the Schaefer report, even if, for a surgeon, Dr. Schaefer's conclusion was so wrong as to breach *his* standard of care. Thus, the Court should have granted Dr. Fleury's motion for judgment under Fed. R.Civ.P. 50 at the close of the plaintiffs' case or at the close of all the evidence.

The Court also agrees with defendant's stated argument in support of the renewed motion for judgment, *viz.*, that the evidence was insufficient to sustain a finding for the plaintiff on the causation element, even if Dr. Fleury breached the standard of care. Given all the testimony about the nature, staging, and metastatic properties of inflammatory breast cancer, the testimony of Dr. Singer was insufficient to establish by a preponderance of the evidence that Mrs. Roberts would have had a greater than 50% chance of survival had there been a diagnosis made immediately after Dr. Fleury received the Schaefer report. *See, e.g., Hurley v. United States*, 923 F.2d 1091, 1098–99 (4th Cir.1991)(applying Maryland law).

For the stated reasons, an Order will be entered separately, granting defendant's renewed motion for judgment pursuant to Fed. R.Civ.P. 50, and entering judgment in favor of defendant Fleury, with costs.

### JUDGMENT ORDER

For the reasons stated in the Memorandum Opinion entered herewith, it is, by the Court, this 24th day of December, 1997, ORDERED and ADJUDGED:

1. That the renewed motion of defendant Fleury for judgment as a matter of law BE, and it hereby IS, GRANTED;

2. That judgment as a matter of law BE, and it hereby IS, ENTERED in favor of defendant Fleury and against plaintiffs, with costs taxed against plaintiff; and

3. That the Clerk mail copies hereof to counsel.